**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THOMAS D. WOODARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:07-1162** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Thomas D. Woodard's Motion for Judgment on the Pleadings (Doc. No. 21) and supporting memorandum (Doc. No. 21) seeking judicial review of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court withdraws the previous reference to the Magistrate Judge. For the reasons explained below, the Court finds that the ALJ's decision is supported by substantial evidence in the record, and that the ALJ applied the correct legal principles in reaching his decision. Accordingly, the Plaintiff's motion will be denied, the Commissioner's decision affirmed, and this matter dismissed.

**I.      INTRODUCTION**

The Plaintiff filed his first application for DIB and SSI on May 27, 2004, alleging that he had become disabled on March 15, 2003. (*See* Doc. No. 13, Certified Transcript of Administrative Record ("TR"), at 13, 53.) Plaintiff was insured for DIB benefits through December 31, 2008. (TR 15.) His claim was denied initially by the Commissioner on October 1, 2004, and again upon reconsideration on January 21, 2005. (TR 33, 39.) He requested, and was granted, a hearing before an administrative law judge ("ALJ"). The Plaintiff then appeared, with counsel, before ALJ Michael R. Swan on August 16, 2006. In a decision dated September 18, 2006, the ALJ denied Plaintiff's application for benefits (TR 13-22). Plaintiff thereafter filed a timely request for review by the Appeals Council, and on May 31, 2007, the Appeals Council denied Plaintiff's request for review, finding insufficient new evidence to warrant such review (TR 5-8). Thereafter the ALJ's decision became the final decision of the Commissioner, from which the Plaintiff's appeal thus arises pursuant to 42 U.S.C. §§ 405(g) and 13183(c)(3).

## II.     THE FACTUAL RECORD

### A.     Background

Plaintiff was born November 5, 1958 and was forty-five (a "younger individual") on his alleged onset date ("AOD") of March 15, 2003.  He was forty-six in May of 2004, his application month, and forty-seven (still a "younger individual") on August 17, 2006, the date of his administrative hearing.  *See* 20 C.F.R. §§ 404.1563, 404.1564, and 404.1565 (classifying individuals according to their age, education and work experience).  Plaintiff completed the eleventh grade.  (TR 211.)  The Plaintiff worked as truck driver, short order cook, dishwasher, auto detailer, and delivery driver before the onset of his alleged disability.  (TR 191.)

### B.     The Relevant Medical History

Plaintiff was injured in a car accident in 1981, which later resulted in a below-the-knee amputation of his left leg in 1985.  (TR 192.)  Following the amputation, Plaintiff was fitted with a prosthesis which allowed him to continue working, including driving a manual transmission truck.  (TR 193).  Plaintiff was briefly treated by Dr. Cynthia Boskind at the Long Hollow Family Practice from April 4, 2003, through August 28, 2003.  (TR 130-54.)  Dr. Boskind had tentatively diagnosed fibromyalgia before the patient discontinued treatment, and had referred Plaintiff to Dr. Michael Watterson, a rheumatologist, who found, based on only one examination, "signs and symptoms *consistent with* fibromyalgia."  (TR 128 (emphasis added).)  Neither physician ever opined that Plaintiff was disabled do to his fibromyalgia.

The Plaintiff then sought treatment with Dr. William Daniel from November 4, 2003 through July 20, 2004; again, for less than a year.  Dr. Daniel assessed fibromyalgia as of November 4, 2003.  Although Plaintiff's treatment relationship with Dr. Daniel apparently ended as of July 20, 2004, Dr. Daniel on March 10, 2005, at the request of Plaintiff's Counsel, completed a Medical Source Statement[1] indicating, inter alia, that Plaintiff could never kneel and could only lie down, sit, stand, or walk for one hour each (four hours total) out of an eight-hour workday.  (TR 177-83).  Aside from his request for a medical source statement from Dr. Daniel in March 2005, Plaintiff had not sought medical treatment of any kind in the two years prior to the August 16, 2006 ALJ hearing.  (TR 183, 195.)

---

[1] The ALJ indicated that the assessment appeared to be based on the claimant's complaints, not studied or clinically observed, and likely the product of self-reporting.  (TR 20.)

Plaintiff claims an inability to work based on a diagnosis of fibromyalgia and problems with his joints and limbs related to his prior amputation; Plaintiff maintains that his "stump" has been plagued by sores which are "relentless." (TR 98.) Plaintiff responded in pain questionnaires that he walks, drives, prepares his own meals, grocery shops, does household chores and reads. (TR. 83-84.)

## III.    THE ALJ'S April 3, 2006 DECISION

Based on his review of the entire record, ALJ Michael R. Swan made the following findings in the written opinion issued on August 16, 2006:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since March 15, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.)[.]

3.    The claimant has the following severe impairments: a left leg amputation below the knee and fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work activity with occasional kneeling.

6.    The claimant is unable to perform any past relevant work (20 CFR § 404.1565 and 416.965).

7.    The claimant was born on November 5, 1958, and was 44 years old on the alleged disability onset date, which is defined as a younger individual (20 CFR § 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 426.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart F, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.    The claimant has not been under a "disability," as defined in Social Security Act, from March 15, 2003 through the date of this decision (CFR 404.1520(g)

(TR 15-22.)

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

Under the Social Security Act (the "Act"), the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  This Court, therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  If substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal standards, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion.  *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995).  Conversely, however, the Court must reverse and remand for further findings if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.  *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, 546 (6th Cir. 2004).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantiality is based on the record taken as a whole.  *See Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).  When there has been a misapplication of the regulations or when there is not substantial evidence to support one of the ALJ's factual findings, the appropriate remedy is generally remand under sentence four of 42 U.S.C. § 405(g) for further consideration.  *See Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### B.    Evaluation of Entitlement to Social Security Benefits

Under the Act, a claimant is entitled to receive benefits only if he is deemed "disabled."  42 U.S.C. § 423(d)(1)(A).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). Disability means a claimant, in light of his "age, education, and work experience," would be unable to "engage in any other kind of substantial work which exists in the economy."  42 U.S.C. § 423(d)(2)(A).

In applying the standards for determining disability, the Secretary has promulgated regulations setting forth a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 406.920. An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. *See id.* The Sixth Circuit has summarized the five-steps of the sequential evaluation process as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); 20 C.F.R. § 404.1520(b)-(f). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. ANALYSIS AND DISCUSSION

Plaintiff Thomas D. Woodard presents the following issues for review:

- Whether the ALJ erred by not giving proper weight to the opinions of the Plaintiff's treating physicians, and thereby improperly evaluated the medical opinion evidence;

- Whether the ALJ erred by not giving proper weight to the Medical Source Statement of Dr. Daniel;

- Whether the ALJ erred by not properly weighing the [Plaintiff's] testimony in this matter, and thereby failed to properly evaluate the [his] credibility; and

- Whether the ALJ erred because there was not substantial evidence to support the finding of available jobs in the economy where the vocational expert's testimony was unreliable

(Pl.'s Brief, at 7.)

As set forth above, the question for this Court is whether substantial evidence supports the ALJ's findings and whether he applied the correct legal standards. *Abbott*, 905 F.2d at 922. Because of the relatively focused nature of the Plaintiff's arguments, the Court does not find it necessary to provide an exhaustive factual account of the Plaintiff's medical history. Instead, the Court will consider each of the Plaintiff's enumerated arguments in turn, considering the first two issues together.

**A. Whether the ALJ erred by not giving proper weight to the opinions of the Plaintiff's treating physicians, or to the medical source statement by Dr. Daniel, and thereby improperly evaluated the medical opinion evidence.**

The Sixth Circuit has observed that where the Commissioner's decision to reject a claimant's disability application is otherwise supported by substantial evidence, reversal will nonetheless be required if the agency fails to follow its own procedural regulation requiring the agency to " 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. *Strunk v. Astrue*, No. 08-201-GWU, 2009 U.S. Dist. LEXIS 33986 (E.D. Ky. Apr. 22, 2009) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922 (6th Cir. 1987)).

An ALJ generally is required give more weight to opinions from treating sources since "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Further, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion to be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Miksell v. Comm'r of Soc. Sec.*, No. 388, 2008 U.S. Dist. LEXIS 12913, at *21 (S.D. Ohio, June 12, 2008) (citing *Harris*, 756 F.2d at 435)).

If the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion. *Harris*, 756 F.2d at 431-35.

The regulation also requires the agency to always "give good reasons" in the ALJ's decision for the weight given the treating source's opinion." *Id.* "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating-physician rule and permits meaningful review of the ALJ's application of the rule. *Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)).

In the present case, Plaintiff argues the opinions of Drs. Boskind, Watterson, and Daniel are entitled to greater weight as medical source evidence, and that the ALJ failed to give good reason for rejecting their opinions (Pl.'s Brief, at 7-15). Plaintiff further asserts that the ALJ erred in not relying on the medical assessment of Dr. Daniel. *Id.* As explained below, the Court nonetheless finds that the ALJ did not err in his treatment of these medical source opinions.

First, neither Dr. Boskind nor Dr. Watterson expressed an opinion regarding Plaintiff's ability to work, though both physicians diagnosed him as potentially having fibromyalgia. The ALJ, while noting that their respective diagnoses of fibromyalgia were "inconsistent with the American College of Rheumatologists ('ACR') diagnostic criteria for fibromyalgia" because the necessary criteria were not established in either case, nonetheless accepted that Plaintiff had fibromyalgia, and determined, as part of the sequential evaluation process that Plaintiff's fibromyalgia was a severe impairment. In other words, the ALJ did not reject the opinions of Dr. Boskind or Dr. Watterson.

Plaintiff also argues that the ALJ erred in assessing the severity of his fibromyalgia when he rejected Dr. Daniel's Medical Source Statement, which clearly indicated his opinion that Plaintiff was unable to perform work of any kind.

Plaintiff relies primarily upon *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007), and *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), to support his contentions that Dr. Daniel's opinions regarding the severity of Plaintiff's fibromyalgia were entitled to the greatest weight.

The present case, however, is distinguishable from *Rogers* in one significant respect; here, unlike in *Rogers*, the ALJ identified fibromyalgia as a severe impairment of the Plaintiff. (TR 15.) A finding of fibromyalgia, however, does not, by itself, automatically entitle a claimant to disability. The Sixth Circuit has recently noted that "a diagnosis of fibromyalgia does not automatically entitle [claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008). In fact, the Sixth Circuit went on to recognize that while "[s]ome people may have a severe case of fibromyalgia as to be totally disabling from working. . . .most do not[.]. *Id.* at 806 (quoting with approval *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)).

Here, it is clear that the ALJ considered the medical opinions of Drs. Boskind, Watterson, and Daniel, as well as those of consulting physician Pinga, regarding the severity of Plaintiff's fibromyalgia and found that the severity of the impairment in Plaintiff's case, as with the majority of such sufferers, was not *entirely* preclusive of all work. (TR 15-20.) The ALJ also clearly stated that the medical source statement by Dr. Daniel was not given significant weight, and the reasons for his departure from the normal deference which would have been accorded a treating physician; namely that it was conclusory in nature and inconsistent both internally and with the record as a whole[2]. In addition, the ALJ placed great emphasis on the fact that Dr. Daniel's examination of Plaintiff for the purpose of completing the medical source statement constituted Plaintiff's *only* medical visit within two years of the ALJ hearing. (TR 20, 188-89.) Accordingly, this Court finds that the ALJ's decision not to accord the medical source statement of Dr. Daniel controlling weight was not reversible error. Furthermore, as required by *Wilson*, the ALJ fulfilled his duty to provide Plaintiff with an adequate explanation as to why he did not accept his treating physician's disability determination, the relative weight which he did accord each opinion, and his reasons for doing so. *Id.*

_____

[2] Dr. Daniel opined that in an eight hour work day the Plaintiff can lie down for one hour, can sit for one hour, can stand for one hour, and walk one hour. The ALJ noted that he had "no idea what Dr. Daniel believed his patient would need to do for the remaining four hours of the day when he wasn't sitting, standing, walking or lying down." (TR 20.)

**B. Whether the ALJ erred by not properly weighing the testimony of the claimant in this matter, and thereby failed to properly evaluate the Plaintiff's credibility**

SSR 96-7p provides instruction on evaluating credibility as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

In addition, 20 C.F.R. § 404.1529(c) describes the kinds of evidence that the ALJ is to consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements, including: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; 5) treatment, other than medication, received for relief of pain or other symptoms; 6) any measures used to relieve pain or other symptoms; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

A claimant's credibility is a significant consideration in the evaluation of pain, because tolerance of pain is very much an individual matter. *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, an ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other. *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). Thus, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997).

In his written decision, consistent with both SSR 96-7p and the above-listed factors from 20 C.F.R. § 404.1529(c), the ALJ, in considering the entirety of the record, determined that Plaintiff's complaints of pain were inconsistent with the objective medical evidence, the type of medications and other treatment prescribed, the failure to take any other measures to seek treatment, and Plaintiff's range of daily activities. (TR 18-19.) Plaintiff obviously disagrees with the ALJ's discounting of his credibility, but it is nonetheless clear that the ALJ stated sufficient reasons for his credibility determination with regard to Plaintiff's degree of pain and his residual functional capability. Accordingly, the Court declines to disturb the ALJ's credibility findings.

**C. Whether substantial evidence in the record supports the ALJ's finding that there are a significant number of available jobs in the community within the Plaintiff's RFC**

At the hearing, the ALJ asked the VE whether there were jobs in the national or local economy that could be performed by a claimant who was capable of unskilled, light work activity allowing for only occasional kneeling. The ALJ identified several jobs that a claimant with those limitations could perform. Plaintiff asserts that the ALJ's hypothetical question posed to the vocational expert (VE) during the Plaintiff's hearing was "inaccurate and incomplete" and, consequently, that the ALJ committed reversible error when he relied on such testimony in denying Plaintiff's claim. (Pl.'s Brief at 20–23.) Plaintiff further contends that the VE erred concerning the jobs cited as examples of unskilled, light work.

In fashioning the hypothetical question posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Additionally, an ALJ is not required to accept a claimant's subjective complaints, and "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Griffeth*, 217 Fed. Appx. at 429 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Neither is the testimony of a VE fatally flawed where the VE enumerates certain jobs only as *examples*, so long as sufficient other jobs *are available* in the national economy based on the particular claimant's RFC. These available jobs may themselves be few in number at the local level yet still constitute a significant number of available jobs. *Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999) (quoting with approval an opinion finding that 125 jobs in the regional economy and 400,000 in the national economy constituted a significant number).

Here, the VE agreed with the ALJ's assertion that "these [jobs] would just be some examples [of light, unskilled jobs]. . . .[and] there would be other jobs we could go through if we had more time." (TR 212-13.) The fact that one or two of the examples given by the VE would not pertain to Plaintiff because they required semi-skilled ability does not eviscerate the VE's testimony where neither the VE nor the ALJ *relied on* those examples. Regardless, the VE's third example, cashier, with which the Plaintiff does not take exception, offers 200,000 jobs in the national economy and 6,000 within the region. These numbers are, by themselves, more than enough to constitute a sufficient number of available jobs.

Based on the VE's unequivocal testimony that he was considering only jobs at the light, unskilled level that would accommodate a claimant with the limitations outlined in the ALJ's hypothetical, the Court finds that the ALJ was justified in interpreting the VE's testimony to mean what he said: that the jobs he identified were those at the unskilled level, though some jobs in those categories identified also existed at the semi-skilled level. The Court rejects the Plaintiff's contention that the VE's testimony did not constitute substantial evidence and further finds that the ALJ was reasonable in relying in part on the VE's evidence to find that there was a substantial number of jobs in the national and regional economies that would accommodate the Plaintiff's vocational limitations.

Finally, the ALJ clearly took into consideration the entirety of the record when constructing the residual functional capacity for the hypothetical, and in doing so he was under no obligation to find *all* of the claimant's evidence as to his own residual functional capacity credible. (TR 18.) Furthermore, the ALJ's assessment that the Plaintiff is capable of occasionally kneeling is supported by substantial evidence in the record where the below-the-knee amputation took place long ago, the Plaintiff continued to work for many years following the accident, and there is credible evidence in the record that the Plaintiff's condition resulting from the amputation has *not* changed so as to render the claimant *completely* unable to work.

Because this Court has found that substantial evidence exists in the record to support the ALJ's residual functional capacity, it follows then that a hypothetical predicated thereon is not flawed, and thus the ALJ's reliance in part on such testimony cannot constitute reversible error.

VI. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ applied the appropriate legal standards in reaching his conclusion, and that his decision is supported by substantial evidence in the record. An appropriate order denying Plaintiff's motion for judgment and affirming the Commissioner's decision will be entered.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge